Carl F. DUDLEY, Plaintiff-Respondent,

v.

John T. DUMONT, Jr.,
Defendant-Appellant.

No. 35351.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 1, 1975.

Motion for Rehearing or Transfer to
Supreme Court En Banc Denied
Aug. 7, 1975.

Application to Transfer Denied
Oct. 13, 1975.

Jack B. Schiff, Clayton, for defendant-appellant.

Cox, Moffitt & Cox, Dallas W. Cox, Jr., St. Louis, for plaintiff-respondent.

RENDLEN, Judge.

Defendant appeals from a judgment entered pursuant to a jury's verdict awarding plaintiff $1,080 actual and $4,500 punitive damages for fraud. Plaintiff charged that defendant individually or by his agent Ken Gainey intentionally misrepresented the effective date of an automobile liability insurance policy and relying on that misrepresentation, plaintiff purchased insurance coverage which was in fact not effective on the date he was led to believe. Plaintiff's auto was involved in a collision prior to the date a policy of insurance was ultimately issued, and thus uninsured, he personally responded in damages to a claim arising from that collision. Defendant's contention that plaintiff failed to make a submissible case on the issue of liability requires a detailed factual review.

Desiring to obtain automobile liability insurance, plaintiff and his son went to a State Farm Insurance agency on December 20, 1965, in Overland, Missouri, and there spoke with the State Farm agent, Ken Gainey. During this meeting Gainey placed a telephone call but the record does not tell us whom he called or the subject of the conversation. Though plaintiff in his brief states the phone call was "to defendant", the evidence fails to justify this statement. The only evidence on this was defendant's testimony that he did not talk with Gainey on that date regarding plaintiff or any insurance desired by him, and further, defendant had never heard of, talked with or had business with plaintiff on December 20 or prior thereto. Plaintiff admitted he had no conversation with defendant on December 20 nor at any earlier time. Plaintiff gave Gainey his personal check dated December 20, 1965, in the amount of $131.50 payable to the Dumont Insurance Agency; then Gainey took a blank printed receipt form from his desk drawer, filled it out[1] and gave a copy to plaintiff. The instrument states it is a receipt to Carl F. Dudley for payment of $131.50, with the words "For Liab 10/20/5 on 56 Ply.—Effective date 12/20/65". The handwritten name John T. Dumont appears on the form but no testimony was offered that this was defendant's signature; defendant, on the contrary, testified it was not. The form also bore the printed words "John T. Dumont, Jr., Insurance". No further proof appears regarding the receipt or its execution. Plaintiff conceded that defendant at no time told him a policy of insurance was in effect as of December 20, 1965.

Plaintiff's son was involved in an automobile accident December 23 which plaintiff reported by phone to someone other than defendant at the Dumont Agency on December 26 and requested claim forms. Defendant admitted that during his absence a phone call was received by an employee in his office from someone named Dudley who said "he was a policy holder of my agency", but the caller did not know which company, what policy or any information about it. A perusal of the office files revealed no record of the matter. No claim forms were sent to

1. Though plaintiff offered no proof concerning the handwritten portions, the evidence justifies the conclusion it was prepared by Gainey.

plaintiff. It was defendant's recollection the phone call (related to him by his employee) came into his office on December 23 or 24.

The $131.50 check given Gainey by plaintiff was received at defendant's office on December 27 with an application on State Farm Insurance Company form. The information from that application was transferred to a Prudence Mutual Insurance Company form by an employee of defendant, and the "Prudence" application form, prepared December 27, together with plaintiff's check endorsed to Prudence Mutual Insurance Company were forwarded that day to the St. Louis office of the insurance company. Defendant testified that prior to December 27 he had no knowledge that plaintiff desired insurance and this testimony is the only direct evidence on the point. The Prudence policy bearing December 27, 1965, as the date of issuance was thereafter sent to defendant's insurance agency, and on January 7, 1966, mailed from defendant's office to plaintiff. An employee of defendant prepared an invoice dated January 7, 1966, showing payment in full of $116.50 [2] for "Liability $10/20/5,000" coverage on a "1956 Plymouth 4 door" placed with the Prudence Insurance Company and issued "12/20/65" to expire "6/20/66". This invoice with the policy were forwarded to plaintiff who admitted he received them but stated they came separately on or about January 10, 1966.

Subsequently plaintiff was threatened with suit in Illinois for his son's accident; though plaintiff was somewhat confused as to the nature of the proceeding, the claim was settled for $300 which plaintiff paid plus attorney fees of $100 and $75 for a bond as security deposit with the Missouri Department of Revenue.

Defendant had been acquainted with Ken Gainey for approximately 15 years and on occasion received referral business from that office; but in the management of his business defendant did not personally process or prepare any of the papers involved with the issuance of plaintiff's policy of insurance. Defendant had no authority to issue a binder on behalf of Prudence and though the company rejected or accepted applications following their own investigations, he recalled no rejections by Prudence of applications from his office.

According to Dumont, Dudley later demanded a refund of his premium since no insurance had been issued that would cover the accident and the refund was in fact made. Gainey, the State Farm agent, was not called to testify. Further facts necessary to the resolution of the issues will be set forth where appropriate.

■ Defendant contends the trial court erred in overruling his motion for a directed verdict since the evidence was insufficient to establish Gainey as defendant's agent and thus he was not liable for Gainey's representations to plaintiff. "[I]n determining whether a submissible case was made, we must consider the evidence in the light most favorable to plaintiffs, must accord to them the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiffs' case." *Foote v. Scott-New Madrid-Mississippi Electric Co-op.*, 359 S.W.2d 40, 41 (Mo.App.1962). "In ruling a motion for a directed verdict at the close of the entire case, the court must take into consideration all of the evidence . . . as well as favorable inferences that may reasonably be drawn." *Black v. Kansas City Southern Ry. Co.*, 436 S.W.2d 19, 23 (Mo. banc 1968). See also *Penberthy v. Penberthy*, 505 S.W.2d 122, 126[3, 4] (Mo. App.1973).

■ Defendant correctly states the relationship of principal and agent cannot be presumed but must be proved by the party

2. No explanation appears concerning the difference in amounts of the $131.50 check and the $116.50 invoice.

asserting the existence of that relationship, citing *Martin v. Mercantile Trust Co.,* 293 S.W.2d 319 (Mo.1956), and *Dell-Wood Tires v. Riss & Co.,* 198 S.W.2d 347 (Mo.App. 1946). Similarly, the existence and scope of agency cannot be established by declarations of the alleged agent. *Quinn v. Graham,* 428 S.W.2d 178 (Mo.App.1968). Having carefully examined the record, we find plaintiff failed to prove that Gainey was acting as agent of defendant. The facts and inferences therefrom, taken in a light most favorable to plaintiff, would permit the conclusion that defendant gave Ken Gainey certain receipt forms imprinted with defendant's name for the purpose of enabling Gainey to refer insurance clients to defendant and that such referrals occurred frequently over a period of years. These were apparently "high risk" applicants whom Gainey could not place with State Farm. Plaintiff sought out Gainey as a State Farm agent who found it necessary to refer the business elsewhere. Gainey used his State Farm Mutual application form which he forwarded to defendant's office and we note he did not send the customer to defendant but apparently made the referral by mail, as much for his own benefit and that of the customer as for any other purpose. It could be found that defendant knew or should have known that Gainey would execute receipts given to him by defendant. Further, it could be concluded that Gainey completed a State Farm Insurance application form for plaintiff with the understanding it would be forwarded to defendant who would process and obtain insurance for plaintiff, and it was so forwarded to defendant, who by the January 7 invoice confirmed the intention to obtain insurance for plaintiff. The facts permit the inference that Gainey, on December 20, 1965, represented to plaintiff he would receive automobile insurance effective that date through the efforts of defendant. However, there was no evidence nor supportable inference that Gainey or plaintiff communicated with defendant on December 20. The mere fact that Gainey placed a telephone call on December 20 of an undisclosed nature to an unidentified third party is no proof of agency.

Plaintiff argues that Gainey's agency for defendant is established by one or more theories: Express agency, implied agency, apparent authority, agency by estoppel, agency by ratification or alter ego. The argument portion of plaintiff's brief does not nicely separate these theories; we nevertheless examine them individually.

■ Express agency is not a viable issue since there is no evidence of a specific agreement between Gainey and defendant authorizing the one to act for and under the control of the other.

■ Implied or inferred agency is actual authority given implicitly by the principal to his agent, ". . . circumstantially proved, or evidenced by conduct, or inferred from a course of dealing between the alleged principal and the agent . . . [a]uthority can be implied only from facts and never from general presumptions unrelated to special circumstances nor upon abstract considerations of the expediency or convenience of such authority. Implied powers, like any others, must be bottomed on some act or acquiescence of the principal, express or implied." 2A C.J.S. Agency § 153, p. 778. See also *Prior v. Hager,* 440 S.W.2d 167 (Mo.App.1969). "In order for one to sanction another as his agent by holding him out as such, two essentials must concur: the purported agent must conduct himself in a manner consistent with some pretense of authority, and knowledge of his conduct in that particular, or some reasonable basis for the suspicion of it, must be brought home to the alleged principal. Silence of the alleged principal is not a factor for consideration unless 'he knowingly allows another to assume, to act for him.' " *Dierks & Sons Lumber Co. v. Morris,* 404 S.W.2d 229, 232 (Mo.App.1966). Since implied authority is based on an inferred agreement between the purported principal and agent, it is possible to circumstantially prove the relationship by means

of course of conduct between the two. Plaintiff argues implied agency is established by the fact that transactions between Gainey and defendant during the 13 or 14 prior years "were of like character to the controversy here". This, however, assumes Gainey had acted as defendant's agent during those prior years though the evidence discloses only that Gainey referred business to Dumont; there is no evidence that Gainey acted in a representative capacity with the knowledge or acquiescence of defendant.

■■■ The key to authority implied from course of conduct is the knowing acquiescence of the principal in the past acts. *State on Inf. of Taylor v. American Ins. Co.,* 355 Mo. 1053, 200 S.W.2d 1 (banc 1946). "An agent's authority may be inferred when·it appears that the agent has repeatedly performed acts like the one in question which the principal has ratified and adopted." *Austin-Western Road Machinery Co. v. Commercial State Bank,* 255 S.W. 585, 588 (Mo.App.1923). Gainey was in possession of defendant's receipt forms, but mere possession of letterheads or billheads does not in itself establish implied agency. *Peninsular Stove Co. v. Adams Hardware & Furniture Co.,* 93 Mo.App. 237 (1902). " 'An agency will not be inferred because a third person assumed that it existed.' " *Dierks & Sons Lumber Co. v. Morris, supra* at 232. Implied authority arises from a relationship between principal and agent and any third party who desires to rely on that relationship has a duty to make reasonable inquiry into the scope of authority. *Dierks & Sons Lumber Co. v. Morris, supra* at 233. There is no evidence that defendant had held Gainey out as his agent nor permitted him to act in such capacity with the knowledge and acquiescence of defendant. Plaintiff relies on *City of Springfield v. Koch,* 228 Mo.App. 511, 72 S.W.2d 191 (1934), in which Edgar, brother of appellant Victor Koch, had over a period of years, with the knowledge and consent of Victor, signed Victor's name to surety bonds similar to the one in issue. Victor took no steps to prevent it nor to give notice such acts were unauthorized. In holding that Edgar had implied authority to bind Victor, the court held authority to do a given thing may be inferred from the agent's previous conduct of *like character* with the principal's acquiescence therein. *Koch* is clearly distinguishable on the basis of Victor's knowledge and acquiescence in the acts; no evidence involving details of the nature of prior dealings by Gainey on behalf of defendant which bespeak agency was adduced in this case. Plaintiff failed to prove implied agency.

■■ Next plaintiff contends Gainey had apparent authority to act for defendant. Unlike implied agency, which is based on relationships between the purported principal and agent, apparent authority arises from manifestations of the principal to the third person. Restatement (Second) of Agency § 8, Comment e (1957). " '.   .   . where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal a particular act, such particular act having been performed, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform it.' " *Erickson v. Civic Plaza Nat. Bank of Kansas City,* 422 S.W.2d 373, 380[13] (Mo.App. 1967); see Restatement (Second) of Agency § 8 (1957).

■■■ To find apparent agency the appearance of authority must have been created by the principal. *Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 13 (Mo.1970); *Fielder v. Production Credit Ass'n,* 429 S.W.2d 307, 313[7] (Mo.App.1968). Here defendant has not placed Gainey in a position of authority from which a third person could reasonably believe he had authority to make representations as to the effective date of a policy. The only indication that Gainey might be an agent of defendant was

his possession of defendant's receipt forms; however, as pointed out above, mere possession of billheads is insufficient to establish agency. Possession of receipt forms may indicate authority to take orders without implying authority to execute a final contract. The evidence suggests Gainey acted more as broker for plaintiff than as sales or soliciting agent for defendant. A person dealing with a supposed agent under these circumstances has the duty of ascertaining the extent of the agent's authority. *Erickson v. Civic Plaza Nat. Bank of Kansas City, supra* at 380. The fact that defendant sent plaintiff an invoice dated January 7, 1966, containing terms similar to the representations made by Gainey to plaintiff on December 20, 1965, is of no assistance to establish apparent authority since apparent authority can only be predicated on facts or appearances shown at the time of the transaction; knowledge subsequently acquired is irrelevant. *Erickson, supra* at 381. Plaintiff cites *Wynn v. McMahon Ford Co.*, 414 S.W.2d 330 (Mo.App.1967), in which defendant automobile dealership gave an employee the title of used car sales manager. It was held a third person dealing with him could reasonably believe he had authority to conclude a sales contract for a boat on plaintiff's used car lot. However, that case involved a secret limitation upon the power of the agent, of which the third person had no notice. The court held at 338: "No matter how valid such limitations may be as between principal and agent they do not detract from the agent's apparent authority." *Wynn* has no application here as this record discloses no agency nor any secret agreement of defendant to limit any suggested agency.

Agency by estoppel is similar to apparent authority except it requires that the person dealing with the purported agent change his position in reasonable reliance upon a manifestation of authority by the purported principal. Restatement (Second) of Agency § 31(1) (1957). If the manifestation of authority to the third person is by some formality, there may be apparent authority, if by parole the principle of estoppel applies. Restatement (Second) of Agency § 31(1), Comment a (1957). As noted, there is no credible evidence defendant held out Gainey as having any authority other than to submit applications for insurance to him. Section 31(2) of the Restatement (Second) of Agency suggests an alternative means of establishing agency by estoppel: "If a principal entrusts to an agent an *executed* document containing blanks, and the agent fills the blanks without authority and delivers the document to a third person, who changes his position in reliance thereon *without notice that the principal did not fill in the blanks before execution of the instrument*, the principal is subject to liability to the third person as if the instrument had been completed by the principal or by an agent properly authorized to fill in the blanks." (Emphasis added.) In this case the evidence indicates that the handwritten terms of the receipt given plaintiff on December 20 were supplied by Gainey in the presence of plaintiff. Even if we assume the signature on the receipt was that of defendant, placed there at some prior time, the requirements of § 31(2) are not met since Gainey filled in the receipt in plaintiff's presence who thus had notice the form was not completed by defendant. Plaintiff could not reasonably believe such blank receipt form, though it may have borne defendant's signature, would authorize Gainey to do more than take orders and give receipts for money paid. Plaintiff's reliance on estoppel to establish agency is misplaced.

The plaintiff next relies on a theory of ratification to hold defendant liable for Gainey's misrepresentation of immediate insurance coverage. The basis of this argument is the January 7 invoice executed by defendant showing the same terms as Gainey's receipt of December 20. Gainey's receipt to plaintiff recited "For Liab 10/20/5 on 56 Ply.—Effective date 12/20/65". The January 7 invoice from defendant's agency to plaintiff states in

part: "Date Issued 12/20/65", which corresponds with the language of the receipt. According to plaintiff this constitutes "ratification" of the fraud. We do not agree. It is well established in our law that there must be scienter, either actual or constructive, to support an action at law for fraud and deceit. Scienter implies guilty knowledge by the tort feasor or a guilty lack of knowledge; the former is charged here. *MacKinnon v. Weber*, 109 S.W.2d 692, 694[3] (Mo.App.1937). The misrepresentation must be made with intent to deceive, "or with what is recognized as the legal equivalent to a deliberately fraudulent intent to deceive." *Cohen v. Metropolitan Life Ins. Co.*, 444 S.W.2d 498, 505[5] (Mo. App.1969). Since defendant made no representations to plaintiff and Gainey was not his agent, we examine the circumstances and reasonable inferences to supply scienter for a ratification by defendant of Gainey's misrepresentations.

On December 27, 1965, defendant's office accepted, processed and forwarded a new application to the company, thereafter received the policy and mailed it with the invoice to plaintiff. Further, defendant personally endorsed the check to "Prudence". If defendant intended to commit fraud and had guilty knowledge of Gainey's misrepresentations on December 27, 1965, when plaintiff's check was endorsed and forwarded with the application, he could only have gained that knowledge from the phone call to an employee in defendant's office on December 23 or 24 (plaintiff testified he called on December 26) in which someone named Dudley claimed he was a policyholder, that his son had been involved in a collision and he wanted claim forms. The caller did not know which company insured them and no record of the matter could be found in defendant's office. The endorsement of the check by defendant on December 27 is sufficient to supply confirmation of the arrangement to provide insurance, but it does not suggest defendant's knowledge of Gainey's misrepresentation. If defendant were truly aware of Gainey's misrepresentation to the effect that coverage was already afforded and if he also knew that this application was from a person who had already experienced an accident, he would not have acted as he did. We consider the fact that on January 7, 1966, the invoice was sent (after the policy had been issued showing its effective date December 27) erroneously stating the date of issuance as December 20, 1965. If defendant had guilty knowledge and had been intending to defraud plaintiff on December 27 and likewise on January 7, he would have made certain the invoice of January 7 showed December 27 (the actual date of issuance) as the "Date Issued" instead of the erroneous date of December 20. These acts bespeak an administrative or clerical mistake by defendant's employee who copied the date of December 20 from the application over to the invoice, as she so testified, rather than intentional ratification of fraud. Otherwise we must assume defendant was advertising or intentionally proclaiming to plaintiff his intent to defraud him and knowingly mailed plaintiff proof of that fraud. This is not a reasonable inference and without it proof of scienter fails. The January 7 invoice is more a badge of innocent mistake than intent to defraud. We cannot say the evidence permits a finding that defendant knew of Gainey's misrepresentation. The absence of such a showing precludes any finding of ratification of fraud. Further, even under the less strict standard for ratification of *agency* plaintiff's proof fails. "As relates to agency, 'ratification' is an express or implied adoption or confirmation, with *knowledge of all material matters*, by one person of an act performed in his behalf by another who at that time assumed to act as his agent but lacked the authority to do so . . ." (Emphasis added.) *Wilks v. Stone*, 339 S.W.2d 590, 595[6–9] (Mo.App. 1960).

In *Gibson v. Metropolitan Life Ins. Co.*, 204 S.W.2d 439 (Mo.App.1947), the plaintiff alleged the agent of defendant

insurance company represented the loan value of an existing insurance policy could be used to pay premiums on a new policy, despite contract language denying an agent authority to make such representation. Although the defendant company sent out policy exchange forms that would result in giving effect to the proposed transaction upon final approval by the home office, the court found against ratification on the grounds that plaintiff did not introduce evidence tending to show the defendant company knew of promises by its agent at the time it sent the forms. "Plaintiff's argument in support of the point that there was a ratification by defendant of the acts and promise of its agents does not take into account the *total failure of proof to show that defendant had any knowledge whatsoever of the promises claimed by plaintiff to have been made by the agents of defendant* that the June, 1933, premium on the policy in suit need not be paid because it would be taken care of in the exchange of policies. It is settled law that an agent's unauthorized promise or contract cannot be held to be ratified by the principal *unless it is shown that the principal had knowledge* of the unauthorized promise or contract made by the agent." (Emphasis added.) *Gibson, supra* at 444–445; see 2A C.J.S. Agency § 73, p. 661. "The first essential in ratification [of agency] is that the principal have full knowledge of all the material facts at the time he is charged with having accepted the transaction as his own." *Hutcheson & Co. v. Providence-Washington Ins. Co.*, 341 S.W.2d 142, 146 (Mo.App.1960). This being true for ratification of agency, a fortiori it is required for ratification of fraud.

 Finally, respondent claims that Gainey acted for defendant as an alter ego. There is no evidence that Gainey was in direct contact with the defendant at the time he completed the receipt given to plaintiff on December 20. There is certainly no evidence of direct control of Gainey by defendant at that time and thus the theory of alter ego is without merit.

Plaintiff has failed to prove any relationship between defendant and Gainey based on any theory of agency that would support a finding that Gainey's representations to plaintiff on December 20 were binding on defendant. Though we view the evidence in the light most favorable to plaintiff, any finding of agency would necessarily rest on speculation and conjecture.

The judgment is reversed.

WEIER, P. J., and CLEMENS, J., concur.