PINE LAWN BANK AND TRUST CO., a Missouri Banking Corp. and Lillian Kelley, Plaintiffs-Appellants,

v.

Milton J. SCHNEBELEN, Trustee under Deed of Trust, Julius Jensen, III, as Nominee of the Trustees of Diversified Mortgage Investors, and Bernie O. Snoddy, Trustee of Diversified Mortgage Investors, Defendants-Respondents.

No. 38991.

Missouri Court of Appeals, Eastern District.

Jan. 30, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 16, 1979.

Application to Transfer Denied May 17, 1979.

W. W. Sleater, Clayton, for plaintiffs-appellants.

Jerome M. Rubenstein, Robert G. Brady, St. Louis, for defendants-respondents.

STEWART, Presiding Judge.

This is an appeal by plaintiff, Ladue-Innerbelt Bank & Trust Company, formerly Pine Lawn Bank & Trust Company (Bank) from a judgment upon motion for summary judgment filed by defendant, Diversified Mortgage Investors (DMI).

We affirm.

Bank in this action seeks to have a deed of trust which it holds on Bonneville Plaza Shopping Center declared to be superior to a deed of trust held by DMI.

Facts conceded by both parties are that DMI made a loan of $1,300,000 to JMC Investments, Inc. (JMC), the owner of Bonneville Plaza Shopping Center (Bonneville) in Bonne Terre, Missouri. A note for the amount of the loan and a deed of trust as security for the note were executed by JMC on May 29, 1973. JMC also made an assignment of existing and future leases and rental contracts conditioned upon breach of its contractual obligations. Upon breach DMI was authorized to exercise all rights of lessor; to collect the rents and apply them to the payment of taxes, insurance and the note. The deed of trust was recorded at 10:54 AM on June 6, 1973.

JMC borrowed $300,000 from Bank as evidenced by a note and deed of trust dated May 30, 1973. The deed of trust in favor of Bank was recorded at 10:57 AM on June 6, 1973.

Before we can delineate the remaining facts we must first determine the basis for our factual determination. Bank filed a petition seeking various kinds of relief. DMI filed a motion for summary judgment with affidavits and supporting documents. Bank filed an "Affidavit in Opposition to

Motion for Summary Judgment." DMI did not file an answer to Bank's petition before filing the motion for summary judgment and affidavits. Bank contends that under the circumstances we must consider the facts alleged in the petition as true. In support of its contention Bank cites *Reisel v. Winsor,* 140 Mo.App. 612, 120 S.W. 1186 (1909). The rule espoused by Bank is applicable, according to Reisel, when the case is before the appellate court "solely upon the petition."

In the instant case we are governed by Rule 74.04(e) which, in part, states: "When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ Although a party may not rely solely upon the allegations of his pleadings, those allegations not controverted by the affidavits and other supporting documents of the movant may be considered as admitted by the moving party. *Hurwitz v. Kohm,* 516 S.W.2d 33 (Mo.App.1974).

With these principles in mind we review the additional facts as presented to the trial court. Many of the facts contained in the briefs of the parties, including random pages from a deposition contained in Bank's brief, are dehors the record and will not be considered. *Holt v. Rabun,* 519 S.W.2d 561 (Mo.App.1975).

We glean from the uncontroverted allegations of the petition that in March of 1974 JMC was in default of its obligation under Bank's deed of trust and that Bank advertised foreclosure of its deed of trust. JMC agreed to correct all its deficiencies in order to induce Bank to forestall foreclosure. Upon inquiry Bank was advised by DMI that JMC was current on DMI's deed of trust, "Taking this into consideration the owner [JMC] did correct all other breaches of the Plaintiff Bank's deed of trust and

having been so told by DMI that there was no breach of the DMI deed of trust, Plaintiff Bank did cancel the advertising of foreclosure of its deed."

On March 31, 1974 the principal owed on the note secured by deed of trust held by DMI was $1,200,000 and the interest owed was $88,199.97.

On March 18, 1974 attorney for DMI wrote to the tenants of Bonneville advising that JMC's note was in default and that future rent payments were to be made to the attorney for DMI.

On March 27, 1974 DMI advised the tenants to make rental checks payable to DMI and send them to Don Shrum and Associates, Box 191, Bonne Terre, Missouri. Upon receipt of these letters the tenants of Bonneville refused to pay rents to Bank.

On May 6, 1974 DMI wrote to the tenants of Bonneville advising them to send these rental checks made payable to DMI to Bank, attention Douglas W. Dodds, President.

On October 25, 1974 Bank foreclosed under its deed of trust and bought in the property at the foreclosure sale for the face amount of its note.

On March 4, 1975 DMI through its attorney notified the tenants of Bonneville that the note secured by deed of trust held by it was again in default and advised them to send all rent payments to DMI in care of its attorney.

Foreclosure proceedings were commenced thereafter. Bank unsuccessfully sought to enjoin the foreclosure. See *Kelley v. Schnebelen,* 545 S.W.2d 332 (Mo.App.1976). After the termination of the injunction proceedings DMI again advertised the foreclosure for August 18, 1975. Prior to the date of sale the principal and accrued interest was $1,464,499. DMI offered to discharge the indebtedness and thus release the lien of the deed of trust upon payment by Bank of $1,000,000. The payment was not made and DMI foreclosed under its deed of trust.

■ Before summary judgment may be granted, it must appear from the pleadings,

depositions and admissions on file, together with affidavits and other proof that there is no genuine issue of fact and that judgment should be entered as a matter of law. Rule 74.04(c), (h). *Allen v. St. Lukes Hospital of Kansas City*, 532 S.W.2d 505 (Mo.App.1975) cert. denied, 429 U.S. 804, 97 S.Ct. 37, 50 L.Ed.2d 65.

Bank urges that there are genuine issues of material facts to be resolved. As we have detailed the facts above we find no such factual issues. As we now view the facts the only issue of fact urged by Bank is the ownership of Bonneville in DMI. Bank's affidavit denies that DMI is the owner of Bonneville "because the foreclosure is a nullity." The statement of Bank is not a statement of fact but a conclusion. The question to be resolved by the court in this case concerns the priority of the two deeds of trust. If, in fact, Bank's deed of trust had priority the effect of the foreclosure would be a nullity and whether such priority exists is a question of law under the facts. The fact that foreclosure by DMI has taken place does not moot the issue to be determined here.

As stated above the facts have been determined by considering those facts alleged in the petition that are not controverted by DMI's affidavits as true, by taking the facts stated in DMI's affidavits and admissible exhibits as true where they are not specifically denied by the affidavit of Bank.

The paramount issue for our determination is whether, under the facts as we have delineated them, the lien of the deed of trust held by DMI was subordinated to that of Bank.

█ There is no question but that DMI's deed of trust was superior to that of Bank at the time the deeds of trust were executed and recorded.

Basically Bank contends that DMI by its conduct in advising Bank that payments on DMI's deed of trust were current, "waived the priority of its lien and is estopped from asserting such priority; DMI should not be permitted to gain by its wrongful acts."

Bank places its primary reliance on *Trout's Investments, Inc. v. Davis,* 482 S.W.2d 510 (Mo.App.1972). The case is readily distinguishable. In *Trout's* defendant Davis purchased a home and obtained a loan from National Bank of Booneville for $27,000 secured by a deed of trust on the property. Davis was given $15,000 of the proceeds of the loan as part of the purchase price. The balance of the loan was placed in a "construction account" to be used for the payment of labor and materials in the remodeling of the home. Among other restrictions, withdrawals from this account could be made only upon the signature of Davis and an officer of National Bank. Davis contracted with plaintiffs, for the furnishing of labor and materials for the remodeling. Before any of the plaintiffs furnished labor or material they inquired of the bank and were assured that the money was available and they would be paid. Plaintiffs were not fully paid. In holding that the plaintiffs' mechanics liens held priority over the deed of trust the court at page 517 stated the law to be that:

> "Under the doctrine of waiver a mortgagee by reason of having induced the furnishing of labor and material may be precluded from asserting the priority of the mortgage over a mechanic's lien."

The elements of waiver and estoppel were present in the case because, as stressed by the court, the Bank had full knowledge of the project, controlled the funds, knew that unpaid bills would be lienable, assured the plaintiffs that they would be paid. Bank thus induced plaintiffs to furnish the labor and materials, that enhanced the Bank's security to plaintiff's damage.

In the case before us in neither Bank's petition nor in its affidavit do they claim that DMI was aware of the fact that Bank had commenced foreclosure proceedings and was relying upon the information it was seeking from DMI as the basis for forestalling the foreclosure at the time. The numerous other cases cited by Bank are to the same effect. In each case the party estopped knew what action the other party

was contemplating and that the party was relying upon the information as the basis of its action.

As we read Bank's contention it does not claim that the misrepresentation as to the status of the note in itself resulted in injury and damage to Bank. It contends "Misrepresentations of DMI in March of 1974 relied upon by plaintiff Bank, coupled with letters by DMI to the tenants, followed by refusal of DMI to account for their demands under the DMI deed of trust, materially changed the Bank's position to its damage, thereby entitling plaintiffs to the relief they seek."

DMI was authorized by the deed of trust with JMC to collect the rents upon default. This they undertook by way of their letters of March 18 and 27 of 1974. Bank gives us no reason to fault DMI in its effort to protect its interests by collecting the rents.

■ Bank sought no accounting in this action and may not complain of a failure on the part of DMI to account at this stage of the proceedings. See *Kelley v. Schnebelen,* 545 S.W.2d 332 (Mo.App.1976).

■ Bank does not undertake to demonstrate how it was damaged solely by reason of the postponement of foreclosure of its deed of trust. The misrepresentation did not result in Bank increasing its loan to JMC. The obligation of Bank to DMI was not increased after Bank became the owner of the property by reason of foreclosure of its deed of trust. In fact DMI offered to forgive the amount of the accrued interest of $264,499 and $200,000 of principal upon condition that Bank pay the remaining principal balance of JMC's note to DMI before the date set for foreclosure of the DMI deed of trust.

The pleading affidavits and documents that are properly before the court reveal no basis for recovery by Bank. The trial court did not err in granting summary judgment for DMI.

Bank further contends that the court erred in failing to grant it leave to file an amended petition or in failing to consider the amended petition in ruling the motion for summary judgment because it had a right to file an amended petition as a matter of course in accordance with Rule 55.-33(a), in as much as no responsive pleading was filed by DMI. It contends that a motion for summary judgment is not a responsive pleading. In view of the state of the record we do not reach the latter issue.

The transcript shows that the trial court ruled upon the motion for summary judgment on November 5, 1976. The transcript also contains the following entry: "And thereafter to-wit: On the 8th day of November, 1976, an Amended Petition was filed, . . ."

Bank contends that the amended petition was sent to the trial judge along with its memorandum in opposition to DMI's motion for summary judgment about June 10, 1976. DMI filed a reply memorandum that makes reference to a proposed amended petition. The certificate of service states that a copy of the memorandum was mailed to Bank's attorney on June 18, 1976.

Central to consideration of this issue is Rule 43.01(g) and (h):

"(g) *Filing—When Required.* All papers after the petition required to be served upon a party and filed with the Court shall be filed either before service or within five days thereafter.

"(h) *Filing with the Court—Defined.* The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court except that a judge may permit the papers to be filed with him, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk."

■ The reference to the amended petition in DMI's memorandum is evidence that the amended petition was served upon DMI, it is no evidence of filing with the clerk of the trial court. We are confined to the record as it is presented to us. *Davis v. Long,* 521 S.W.2d 7 (Mo.App.1975). Bank was required to file its amended petition before service upon DMI or within five days after service on DMI. Rule 43.01(g). The record before us shows that the amended

petition was not filed before or within five days after service upon DMI but two days after judgment had been entered against Bank. This case is distinguishable from those cases where amendments may be made after judgment to conform to the evidence under Rule 55.33(b). The attempt at amendment came too late.

We do not speculate in this case as to the consequence of Bank's attempt to file the amended petition by sending it to the judge, rather than filing with the clerk as required by Rule 43.01(h).[1]

We have nevertheless reviewed Bank's proposed amended petition which is in three counts. The first count re-alleges the original petition in all respects. Count II is an action to clear title to the real estate that is the subject of Count I, the original petition. Count III is an action for damages based upon the factual allegations of the original petition.

The factual basis for the claims of Bank in Counts II and III are the same as those contained in Count I which remains unchanged by the proposed amendment. It follows that the legal consequences flowing from those facts would culminate in the result reached with respect to the original petition. Bank was not prejudiced by the court's failure to consider the proposed amended petition.

The judgment of the trial is affirmed.

REINHARD and STEPHAN, JJ., concur.

---

1. Compare such cases as *Byers v. Zuspann,* 257 S.W.2d 384 (Mo.App.1953), *Dawson v. Cross,* 88 Mo.App. 292 (1901) and *Ferguson v. Long,* 341 Mo. 182, 107 S.W.2d 7 (1937).