**Alan W. GEORGE and Barbara E. George, Plaintiffs–Defendants,**

v.

**LEMAY BANK AND TRUST COMPANY, Defendant,**

and

**Missouri Title Guaranty Company, Defendants–Respondents.**

No. 41154.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 23, 1980.

Motion for Rehearing En Banc or for Transfer to Supreme Court Denied Oct. 17, 1980.

Daniel H. LeGear, Clayton, for plaintiffs–defendants.

Robert C. Jones, Harold A. Tzinberg, Clayton, for defendants–respondents.

STEWART, Presiding Judge.

Plaintiffs brought an action in two counts against ten parties titled Petition For Constructive Trust, Declaratory Judgment and

Suit In Equity. Defendant Missouri Title Guaranty Company filed a motion for summary judgment. The trial court entered judgment dismissing plaintiff's cause with prejudice as to this defendant. The trial court specifically designated the Order to be a final judgment for purposes of appeal. Rule 81.06. On this appeal we shall refer to Missouri Title Guaranty Company as defendant.

We affirm the judgment of the trial court.

In reviewing this case on appeal we are mindful that summary judgment may not be granted unless it appears from the pleadings, depositions and admissions on file together with affidavits and other proof that there is no genuine issue of fact and that judgment should be entered as a matter of law. *Pine Lawn Bank and Trust Co. v. Schnebelen*, 579 S.W.2d 640 (Mo.App. 1979).

We state the facts as obtained from the admissions in the pleadings and from the depositions of plaintiffs and of an officer of defendant.

In June of 1976 plaintiffs, Alan George and his wife Barbara inspected a two story home that was nearing completion in Briar Hill Farm, a subdivision in Kirkwood, Missouri. This subdivision was being developed by Berbay Construction Company, a corporation (Berbay). Plaintiffs were interested in the house and returned to the property and met with a Mr. Forrest Clogston and Nancy Schuman, an employee of Berbay, and made a $500.00 deposit on the home.

On June 17, 1976 plaintiffs entered into a contract to purchase the home. The contract called for a total purchase price of $74,500.00. The plaintiffs made an earnest money deposit of $35,000.00 by way of a cashier's check made payable to Berbay Construction Company. Berbay deposited the check in its account at Lemay Bank and Trust Company. The balance was to be paid in cash upon closing. The contract

further provided that the closing was to be at the Missouri Title Guaranty office in Clayton, Missouri on July 15, 1976. The contract was signed by Alan H. George and Barbara E. George as purchasers and by Richard Grider as President of Berbay Construction Company as seller. The contract required the seller to provide a marketable title or title insurance.

The contract also contained the following:

"Approved on date first above written: MISSOURI TITLE GUARANTY

is authorized to order title examined."

The signatures of plaintiffs are found under this statement and the signature of the corporation is immediately to the right of plaintiffs' signature.

Berbay sent a copy of the sales contract to defendant title company's closing department with a request for them to "run the title." On July 8, 1976 the closing department ordered "title" on the property described in the sales contract from their title department. They requested the "title" by July 12, 1976. A commitment for title insurance was issued based upon the title search of defendant. The effective date of the commitment was July 13, 1976 at 8:00 A.M. This document revealed that in addition to taxes and easements, the property was subject to deeds of trust to Jefferson Savings and Loan Association (Jefferson) to secure a note in the sum of $57,600.00 dated September 12, 1975 and to Pioneer Bank and Trust Company (Pioneer) to secure a note for $152,500.00 dated January 2, 1976. Defendant requested and received loan pay off statements showing that the amount required to discharge the lien of the deed of trust held by Jefferson to be $58,132 and that held by Pioneer to be $9,481.65 as of July 16, 1976.

The commitment for title insurance was kept in the file of defendant in contemplation of the closing. Copies of the commitment were not sent to the parties to the sales contract.

The closing was postponed from July 15 to August 2, 1976 because Berbay had not completed the work on several items on the house. Berbay gave possession of the house to plaintiffs on July 16, 1976. The City of Kirkwood refused an occupancy permit to plaintiffs because of the unfinished work. It did however, issue a temporary occupancy permit. After plaintiffs moved into the house they tried in vain to get Berbay to complete the unfinished items prior to August 2, 1976. The parties did not appear for the closing on August 2, 1976.

Plaintiffs had to have the exterior of the house painted and repairs made to the plumbing in order to obtain the permanent occupancy permit. They also attempted to remedy leakage in the basement. Berbay did the other work necessary to complete the house some time after January, 1977.

Plaintiffs had no discussions with anyone from Berbay with respect to setting a closing date after August 2, 1976. The plaintiffs continued to live in the house. They had no personal contact with anyone at Missouri Guaranty Title Company.

The plaintiffs had a sufficient amount of money in a savings account to pay the balance due on the purchase price for the house. This money was available up to August 2, 1976. They did not appear at the office of defendant or anywhere else and tender payment of the balance of the purchase price on August 2, 1976 or at any time thereafter.

On April 30, 1977, two men from Jefferson came to the house and told Mrs. George that Berbay had defaulted on the deed of trust held by Jefferson and that it was going to foreclose. This was the first time that they had actual knowledge of this encumbrance. They subsequently learned of a second deed of trust on the house which was held by Lemay Bank and Trust Company.[1]

Jefferson foreclosed its deed of trust on June 8, 1977 and the property was bought in by plaintiffs for the sum of $79,001.00.

1. Lemay acquired the Pioneer deed of trust.

Other facts necessary to a determination of the issues will be set out as the issues are discussed.

Plaintiffs' primary contention is that a principal–agent relationship existed between plaintiffs and defendant because the sales contract between plaintiffs and Berbay authorized defendant "to order the title examined," and when defendant was furnished a copy of the contract it became plaintiffs' agent with a duty to examine the title and when it learned that there were liens that could not be satisfied it was defendant's duty as fiduciary to give plaintiffs timely notice of the encumbrances.

It is apparent that plaintiffs premise their recovery upon the theory that defendant was acting as their agent. If the relationship of principal and agent does not exist plaintiffs' cause must fail.

The relationship of principal and agent arises out of contract, express or implied. It is an agreement whereby one person, the agent, consents with another, the principal, to act on behalf of the principal subject to the control of the principal. *Rackers and Baclesse, Inc. v. Kinstler*, 497 S.W.2d 549, 552 (Mo.App.1973). As distinguished from an agency relationship, an independent contractor exercises an independent employment and contracts to do a piece of work according to his own methods. The right of the person employed to control the method of doing the work is the principal consideration in determining the relationship. *Ross v. St. Louis Dairy*, 98 S.W.2d 717, 723 (Mo.1936).

In the case at bar the sales contract between plaintiffs and Berbay contained a clause in the body of the contract whereby plaintiffs and Berbay authorized defendant to have the title examined. By other clauses in the contract it was agreed between plaintiffs and Berbay that plaintiffs would pay for the cost of the title examination if the title were marketable. If the title was not marketable Berbay would be obligated to pay for the title examination.

■ Plaintiffs would have us read the sales contract as creating the principal–agent relationship between plaintiffs and defendant. Plaintiffs argue "[t]he particular words used to create the agency in this particular case are found in the sales contract wherein 'Missouri Title Guaranty is authorized to order title examined.'" They do not explain how this clause creates the agency relationship and we cannot read it as anything more than agreeing with Berbay that defendant perform title service for the contracting parties and to report the status of the title at the time of closing. This clause does not specifically state that defendant shall be plaintiffs' agent, it does not provide that plaintiffs shall have any control over the method by which defendant is to provide its services to the parties. There is clearly no relationship of principal and agent created between plaintiffs and defendant. Nor does the fact that plaintiffs were obligated to pay for defendant's services in the event that title was marketable create the relationship.

In this case the plaintiffs voluntarily entered into a sales contract with Berbay and gave it the earnest money deposit of $35,000.00. The primary effect of the entire transaction was that plaintiffs lost their earnest money deposit. Defendant had no involvement with the negotiations for the purchase or with the amount that was paid as an earnest money deposit.

■ Defendant was hired by Berbay to examine the title. Defendant prepared the title. The closing was not held in July of 1976 according to plaintiffs because Berbay had not completed some items of construction. The same condition existed at the closing date of August 2, 1976. Plaintiffs did not contact defendant at any time until after the foreclosure. Of necessity they did not seek to determine the status of Berbay's title to the property from defendant. In any case the fact that there were curable encumbrances on the property prior to the date of closing would have been of no avail to plaintiffs, because the buyer cannot complain that the seller's title is defective or encumbered prior to the time fixed for closing. *Hellrung v. Hoechst*, 384 S.W.2d 561, 564 (Mo.1964). The contract in this case further provided that if title was imperfect the seller would be given sixty days within which to perfect title.

■ Plaintiffs took no action based upon anything that defendant did or failed to do to their detriment. We can find no basis upon which plaintiffs may recover from defendant.

■ Plaintiffs also complain that the court erred in failing to grant them leave to file a second amended petition as to defendant. The record reveals that the parties argued the motion for summary judgment which was taken under submission and judgment was rendered dismissing plaintiffs' cause as against defendant Missouri Title Guaranty Company on May 12, 1978. On May 19, 1978 plaintiffs filed a motion to set aside the judgment and for leave to file an amended petition. The latter motion was overruled in all respects on May 26, 1978.

The amendment sought is not one permitted in order that the pleadings may conform to the evidence as provided in Rule 55.33(b). It was sought after judgment had been entered and thus came too late. See *Pine Lawn Bank and Trust Co. v. Schnebelen*, 579 S.W.2d 640 (Mo.App.1979).

Plaintiffs concede that the proposed amended petition would not change the cause of action pleaded, it would "more clearly state the facts." The issue in the trial court was not the sufficiency of the petition to state a cause of action. The judgment was based upon the motion for summary judgment. What we have said in ruling the merits of plaintiffs' appeal would be applicable even under the proposed amended petition. Plaintiffs were thus not prejudiced. *Pine Lawn Bank and Trust Co. v. Schnebelen, supra.* The court did not err in failing to grant leave for plaintiffs to file their second amended petition.

The judgment of the trial court is affirmed.

SNYDER and SIMON, JJ., concur.