**Linda HYKEN, Plaintiff-Appellant,**

**v.**

**The TRAVELERS INSURANCE COMPANY, Defendant-Respondent.**

**No. 47655.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 2, 1984.

---

Lewis & Rice, Mark T. Keaney, St. Louis, for plaintiff-appellant.

Eugene K. Buckley, St. Louis, for defendant-respondent.

SIMON, Judge.

The plaintiff, Linda Hyken (Hyken), appeals from the grant of defendant's, The Travelers Insurance Company's (Travelers), motion for a judgment notwithstanding the verdict (N.O.V.) in her action for breach of an oral agreement to provide life insurance for her father, Sid Siteman (Siteman). The court's judgment N.O.V. was granted following the return of a verdict of $1.00 in favor of Hyken and the denial of her post-trial motion for $50,000 plus prejudgment interest and her alternative motion for new trial solely on the issue of damages. On appeal, Hyken contends that

the trial court erred in sustaining Travelers' motion N.O.V. because there was sufficient evidence that (1) Travelers agreed to issue an insurance policy covering Siteman's life; (2) a jury could reasonably infer that Travelers' home office approved the coverage prior to the execution of the insurance application; (3) if Travelers' home office did not give advance approval it ratified coverage after learning of Siteman's death; and (4) Siteman was on duty the day that the policy would be effective; (5) that the trial court erred in denying plaintiff's post-trial motion because the jury verdict determined liability correctly but the damage award was inadequate in that only evidence on damages was of $50,000. We affirm.

We shall review the evidence in a light most favorable to Hyken, giving her the benefit of all reasonable inferences not in conflict with her position and shall disregard Travelers' evidence except as it may support Hyken's action. In May, 1974, Herbert Wolkowitz, president of Inland Oil and Transport Company (Inland) contacted Insurance Consultants, Inc. also known as Reed, Stenhouse, Inc. of Missouri (I.C.I.), about the possibility of obtaining life insurance coverage for Siteman, Chairman of the Board, Treasurer and stockholder of Inland. Wolkowitz talked to I.C.I.'s agent Steve McDonald about coverage and informed him that Siteman was in his seventies, gravely ill at times, recently hospitalized, and very frail. Wolkowitz also disclosed the name of Siteman's doctor to allow for further inquiry into Siteman's health condition. In the course of ensuing discussions, McDonald told Wolkowitz that individual coverage would probably be difficult to acquire, but indicated that a group plan could be a viable option. In mid June, McDonald, after having discussed various plans for group coverage with Roger Smith, a salesman for Travelers with limited underwriting authority, contacted Wolkowitz to set up a meeting concerning these plans. During that meeting with Wolkowitz on June 14, McDonald related Smith's indication that Travelers would be willing to write a group policy for Inland.

Wolkowitz was also told that Smith saw no problem including Siteman in this group plan because the home office computer had approved of the preliminary numerical data. During this meeting additional information was obtained on Siteman and general factual information acquired on Inland as requested by Smith in order to facilitate formulation of a proper policy. At the meeting Wolkowitz completed and signed an application for insurance and tendered a binder check for $329.19 which equaled the first premium. He gave these to McDonald, who would then forward them to Travelers. McDonald told Wolkowitz that if the application was signed and the binder check tendered, coverage would be bound as of that date. This statement was corroborated by Inland's outside accountant, who was a witness to the transaction. Also, McDonald testified that Smith was present at this meeting and advised Wolkowitz that Travelers' group insurance coverage was then bound. However, Wolkowitz testified that no one from Travelers was present at the meeting.

The application provided:

It is requested that the insurance be effective from 12.01 a.m. standard time at the applicant's address on ___(date)___. No insurance shall be effective until this application shall have been accepted and the effective date approved by the company at its home office and a binder premium equal to the premium for one month shall have been paid.... This is a preliminary application.

It further states:

No agent can make any insurance effective or make, alter or discharge any insurance policy or extend the time for payments or premiums nor can the terms of any application, receipt or policy be varied or altered or its conditions waived or extended in any respect except by written agreement of the company, signed by its President, one of its Vice Presidents or Secretaries.

Wolkowitz executed the application in the names of 17 Inland employees and sent

them beneficiary cards which McDonald had provided. Siteman had assigned the policy ownership to Hyken who named herself as beneficiary upon his death. Siteman was admitted to the hospital on June 15 and died on June 22. McDonald contacted Wolkowitz, on June 22nd, to tell him that Travelers requested a meeting on June 27. Prior to the meeting, Smith told Travelers' home office that Siteman had died. The home office informed Smith that no policy had been written because there was a problem with an insufficient number of employees according to Travelers' underwriting rules. The home office gave general instructions to Smith as to requirements necessary to create a plan to cover Inland. In the meeting on June 27, Smith informed Wolkowitz that the home office did not accept Inland's policy application because an insufficient number of employees were included. He returned the unnegotiated binder check and the application. Smith then proposed a policy which would cover 25 employees at a slightly higher premium. He indicated he did not believe Siteman's death would pose any difficulties. Wolkowitz, believing Siteman would be covered by the policy, agreed to this proposal. A new application was executed on June 27th which Smith backdated to June 14 and an increased binder check was tendered to cover 25 Inland employees. Following the meeting, Wolkowitz received a death claim form for Siteman from I.C.I. which Hyken, as Siteman's beneficiary, completed and returned to Travelers on July 31, 1974. Travelers rejected this claim, refusing to pay the beneficiary because its home office had not approved Inland's policy application. Hyken then filed this action charging Travelers with breach of an oral contract to provide life insurance coverage. At the close of the evidence, Travelers moved for a directed verdict which was denied. The jury then returned a verdict for Hyken and an award of $1.00 in damages. Both parties filed post-trial motions. Hyken moved for entry of judgment of $50,000 plus prejudgment interest, or alternatively, a new trial solely on the damage issue. Travelers moved for a judgment notwithstanding the verdict. The court denied Hyken's motion, but sustained Travelers' on the grounds that:

(1) The court erred in denying Travelers' motion for a directed verdict; (2) there was no evidence that Travelers agreed to issue a group insurance policy; (3) there was no evidence that the application for insurance was accepted by Travelers or by anyone with authority; and (4) there was no evidence that Roger Smith whom Hyken claimed had agreed to this coverage, had any authority to bind Travelers.

Hyken first contends that the trial court erred in granting a judgment N.O.V. because there was sufficient evidence that Travelers agreed to issue a life insurance policy covering Sid Siteman in that Roger Smith, Travelers' salesman, represented on numerous occasions that coverage was so bound. Plaintiff argues that Travelers is bound because its agent represented that Siteman was covered.

The authority of an agent to make a contract of insurance is determined by the law of agency. *Travelers Indemnity Co. v. Beaty*, 523 S.W.2d 534, 538[8–11] (Mo.App.1975). Under principles of agency law, it is elementary that for an agent to bind the principal the agent must have authority to do so. Authority may be actual or apparent, but the burden of proving it falls on the party seeking to rely on it. *Dudley v. Dumont*, 526 S.W.2d 839, 843–44[3, 4] (Mo.App.1975). Here Hyken had that burden, and we find that she failed to meet it.

Actual authority is authority which the principal has conferred, either expressly or impliedly, on the agent, empowering the agent to act on the principal's behalf. *See* Restatement (Second) of Agency § 7 (1958). Apparent authority, on the other hand, is authority which the principal, by his acts or representations, has led third persons to believe has been conferred on the agent. *Dudley v. Dumont*, 526 S.W.2d at 845[16]. Thus, actual authority arises from the principal's relationship with the agent, while apparent authority arises from

the principal's representations to the public or third parties.

█ The record fails to show that Smith had actual authority to bind Travelers. While there is a statement that Smith had "limited underwriting authority," this statement does not define the extent of this authority. Any finding that the "limited underwriting authority" included the authority to bind Travelers here would be speculative. Nor do we find any evidence of past dealings by which Travelers could have impliedly authorized Smith to bind it. Such evidence would entail proof of Travelers' acquiescence in Smith's exercise of this type of authority previously. *Id.* at 844–45. Thus there was no actual authority.

The record also fails to show that Travelers made any representations that would reasonably have led Wolkowitz to believe that Smith had the authority to bind it. Indeed the only evidence is that Travelers' forms put Wolkowitz on notice that Smith had no such authority. Thus, there was no evidence to support a finding that Smith could bind Travelers. Smith's representations that he was binding Travelers are therefore of no effect. Hyken's first point is rejected.

In her second point, Hyken argues that there was sufficient evidence for the jury to find that Travelers had agreed to issue the policy because Smith represented that Travelers' home office had approved coverage. Although Travelers treats this too as a question of Smith's authority, the argument focuses not on his authority to bind Travelers, but rather on the allegation that he relayed the fact of approval from those who did have authority. Smith's authority is therefore immaterial because the point alleges that there was evidence from which the jury could find that Travelers bound itself.

█ We find this argument to be unpersuasive. To form a basis for plaintiff's recovery, the home office approval must, in some way, give rise to a contract. The creation of a contract requires a definite offer and an unequivocal acceptance. *Coff-*

*man Industries, Inc. v. Gorman-Taber Co.*, 521 S.W.2d 763, 769[3–5] (Mo.App. 1975). The approval, therefore, must constitute either an offer or an acceptance for the creation of a contract.

█ The offer and acceptance are the parties' manifestations of assent to the terms of the contract. The offer must be sufficiently specific on the terms of the contract that, upon its acceptance, a court may enforce the contract so formed. The essential terms of an oral contract of insurance are (1) subject-matter, (2) risk insured against; (3) the amount; (4) the duration of the risk; and (5) the premium. *Morris v. Reed*, 510 S.W.2d 234, 329[6] (Mo.App. 1974). The question, therefore, is whether Travelers' approval is a manifestation of Travelers' assent to those terms. We find it is not, because the only term shown to be agreed to at the time of Travelers' approval was that the risk insured against would be death.

The evidence of Travelers' approval consisted solely of the testimony of McDonald as to statements made to him and Wolkowitz by Smith. Those statements, construing them most favorably to plaintiff, show that Travelers had agreed to issue a group policy in which Siteman would be included. This does not, however, show that there was an agreement on the whole subject matter of the policy, because the parties never intended to include only Siteman in the group. The size of the rest of the group, and the identity of its members were not agreed upon. The first time either of the parties identified a specific group was when the first application was completed by Wolkowitz. There is no evidence to indicate that Travelers' approval was an offer to insure that group, or that this group had been identified and offered to Travelers previously. Therefore, there was no agreement on the subject matter of the policy beyond the agreement to include Siteman in whatever group was finally agreed upon.

Similarly, there was no evidence that an amount of insurance was agreed. There is an indication that negotiations had included

discussion of an amount, but Smith's statements to McDonald included no mentions of an amount. Again, the first indication of either party's deciding on an amount was Wolkowitz's completion of the application form.

As to the duration of the risk, the record is again silent. The record is barren of any indication that the parties even contemplated this term. Therefore, this term too is missing.

Finally, we come to the question of the premium. Smith's statements do not mention a premium for this coverage. Negotiations prior to Travelers' approval did not include the subject of the premium. The checks that were tendered with the application forms are the only evidence that a premium was set for the coverage, and the record is silent that these amounts were set by Travelers home office. We find this term is missing also. Because the evidence fails to show that Travelers' approval was a manifestation of assent to four of the five essential terms of the contract, we find that it was neither an offer nor an acceptance of a contract of insurance. We reject Hyken's second point.

Hyken next contends that the trial court erred in entering the judgment N.O.V. because even if Travelers' home office did not give approval in advance of the submission of the application, it ratified coverage with an effective date of June 14, covering Siteman's claim. "As relates to agency, 'ratification' is an express or implied adoption or confirmation, with knowledge of all material matters by one person of an act performed in his behalf by another who at that time assumed to act as his agent but lacked authority to do so...." *Dudley v. DuMont,* 526 S.W.2d at 847[27,-28] (citing *Wilks v. Stone,* 339 S.W.2d 590, 595[6–9] (Mo.App.1960)). The record shows that in the June 27 meeting with Wolkowitz, Smith, having received general instructions from the home office, returned the application and premium check to Inland and explained that the first application did not comply with underwriting rules. He proposed that Inland submit a new applica-

tion suggesting there would be no problems with acceptance and that Siteman's death would not hinder acceptance of the policy. A new check was tendered and a new application was executed which Smith backdated to June 14, eight days before Siteman's death. The record shows that the home office gave general instructions and there is no evidence from which to infer it was aware of Smith's actions and representations or that, had it become aware, it would have adopted them. Further, there is no evidence of any act which would constitute an adoption or confirmation. Travelers never accepted any benefits under the supposed contract and continually disclaimed coverage until approval was given. Plaintiff's third contention fails.

Finding our decision on points I, II and III dispositive of the appeal, the remaining points need no further discussion.

Judgment affirmed.

CRIST, P.J., and PUDLOWSKI, J., concur.