Elsie M. LEAR, Appellee,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellant.

No. 85–1453.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1985.

Decided Aug. 8, 1986.

Rehearing Denied Sept. 4, 1986.

Austin Parham, Hannibal, Mo., for appellant.

Steven E. Raymond, Shelbyville, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Elsie M. Lear brought suit in a Missouri state court for fraudulent misrepresentation against The Equitable Life Assurance Society of the United States (Equitable), based on the statements of its agent, Den-

zil D. David. Following removal to federal district court[1] on the basis of diversity jurisdiction, a jury awarded Lear $214,-000.00 actual damages and $200,000.00 punitive damages. Equitable appeals arguing that (1) Lear failed to establish David's agency and authority; (2) appellee did not prove the statute of limitations was satisfied and it was error not to instruct the jury on the statute; (3) a prior bankruptcy judgment against David was res judicata as to this case; (4) it was error to give a non-Missouri Approved Instruction on apparent authority; (5) the verdict director was incomplete; (6) deposition evidence was improperly admitted; (7) the parol evidence rule was violated; and (8) Lear failed to prove her damages.

We reverse in part and remand for a redetermination of damages and the application of the statute of limitations.

### BACKGROUND.

From January, 1973 to approximately September, 1975 Lear and her husband (now deceased) delivered checks totaling $125,000.00 to David which he was to invest in Equitable for a retirement annuity for the Lears. In exchange for their checks, which were made payable to David, the Lears were given documents entitled "Personal Notes."[2] These notes, which were on one page each and either typewritten or in some cases handwritten, made no mention of Equitable, but rather stated that David would pay the Lears a certain amount of money the first of every month.[3] Lear testified that she believed David would deposit the money, purchase an annuity for the couple, and then upon receiving money from Equitable would mail the check to them. The couple did receive some payment checks from David, written on his personal account which listed both him and his wife as account holders. Unfortunately, he never remitted any money to Equitable.

The Lears' only prior dealing with David was in December, 1972 when they purchased an insurance policy on Mrs. Lear's life and an annuity from Equitable, both of which they cancelled. Lear testified that they cancelled these because as farmers they could not be assured of a regular income to make premium payments. As an alternative, David devised a single premium annuity which they could purchase when they had large sums of cash. This is what they believed they had purchased from Equitable.

The Lears never received any documents from Equitable or had any dealings with anyone other than David. The only thing they received with Equitable's name on it was David's business card. They never signed any applications or forms with Equitable, because David said he would do this for them. Lear did call the Hannibal, Missouri office to confirm that David worked there.

David used Equitable's office space, telephones, literature and secretarial services.

---

1. The Honorable Stephen N. Limbaugh, United States District Judge, Eastern and Western Districts of Missouri.

2. The Lears did make some purely personal loans to David, but they appear to have been made after the monies supposedly were paid to David for the annuities.

3. The first note signed by the Lears and David serves as an accurate example of all the notes signed by them. We reprint a copy of it here.

  January 9 1973    James E. Lear.
                       Elsie M. Lear.
  Personal Note.    Denzil D. David.
  $25,000.00 Note.

  I, the undersigned, do promise to pay to Mrs. Lear, Elsie, Wife of James E. Lear, the Monthly Payments of $225.50 for a 10 year period on the first day of each Month beginning Feb. 10, 1973 or untill [sic] the note is repaid in full.

  If Mrs. Elsie Lear predeceases the Bearer of the note, Mr. James E. Lear, then the payments will continue to Mr. James E. Lear on a Monthly basis untill [sic] the note is repaid.

  No Part of this Note can be altered in any way unless all of the Parties Agree.

  This Note signed and agreed to on this 9th day of January 1973 by the following Parties by the signatures afixxed [sic].
          /s/ James E. Lear
          /s/ Elsie M. Lear
          /s/ Denzil D. David

His employment contract (1) prohibited him from working for another insurance company; (2) required him to sell annuities; (3) allowed him to collect the first premium check in his own name; and (4) stated that he was to follow Equitable's rules and regulations. He was supervised by an agency manager and a district manager.

Prior to this case, Lear filed suit against David in Missouri state court. She eventually received a final judgment against him in bankruptcy court in the amount of $125,000.00 which he stipulated was nondischargeable. She did not receive any money from this judgment.

## DISCUSSION.

### (1) Agency Issues.

Appellant makes a series of arguments attacking Lear's case establishing David's agency and Equitable's liability. First, it argues that Lear did not prove that David was Equitable's agent and more specifically she did not demonstrate its right to control David.[4]

These arguments are unpersuasive. We may only reverse a jury verdict, as Equitable has requested, when, viewing the evidence in a light most favorable to the verdict and giving the prevailing party the benefit of all reasonable inferences, no evidence of substance supports it. *Smith v. Honeywell, Inc.*, 735 F.2d 1067, 1069 (8th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 576, 83 L.Ed.2d 516 (1984). We believe the evidence was sufficient to support a finding of an agency relationship.

■ An agency relationship is created when "one person, the agent, consents with another, the principal, to act on behalf of the principal subject to the control of the principal." *George v. Lemay Bank and Trust Co.*, 618 S.W.2d 671, 674 (Mo.Ct.App. 1980).[5] The contracts between Equitable and David, especially the ones signed February 25, 1974 and October 1, 1966, call him "the agent" (except for one paragraph which states that he is an independent contractor free to make his own decisions), do not allow him to work for another insurance agency, place limits on his authority and state that he is subject to Equitable's rules and regulations. The testimony at trial also revealed that he was supervised by Equitable's officials. This evidence is sufficient to show that David consented to act on Equitable's behalf, subject to its control, and that he was not an independent contractor who worked according to his own methods. *See id.*

Equitable also argues that there is insufficient evidence proving David's authority to do his acts.[6]

■ As to the first premium check given by the Lears we disagree. In this analysis we are mindful that our focus is not whether Equitable authorized the fraud which was perpetrated against Lear, but rather we examine the question whether it authorized the payment of monies to David. *See Globe Indemnity Co. v. First National Bank in St. Louis*, 133 S.W.2d 1066, 1071 (Mo.Ct.App.1939). In David's employment contracts, the first paragraph specifically lists the collection of first premium checks from annuity holders as one of the acts which the agent is authorized to do. From this we conclude that Equitable had given David express or actual authority, *see Hyk-*

4. Equitable also argues that Lear did not plead David's agency in her complaint. The pleadings state that David was an insurance agent employed by Equitable with either actual or apparent authority to transact Equitable's business. This certainly complies with Fed.R.Civ.P. 8(a)(2)'s requirement of a short and plain statement of the claim showing that the plaintiff is entitled to relief.

5. Missouri law controls in this action as a federal court must apply the substantive law of the forum in which it sits when federal jurisdiction is based solely on diversity of citizenship. *See Wolgin v. Simon*, 722 F.2d 389, 391 (8th Cir. 1983).

6. In order to hold appellant liable for the acts of its agent Lear must establish both "the agency relationship [which we have just found to exist], and the scope of the agent's authority." *Houston v. Groth Enterprises, Inc.*, 670 S.W.2d 178, 180 (Mo.Ct.App.1984); *see also Hyken v. Travelers Insurance Co.*, 678 S.W.2d 454, 457 (Mo.Ct. App.1984).

*en v. Travelers Insurance Co.,* 678 S.W.2d 454, 457 (Mo.Ct.App.1984), to collect the Lears' first check dated January 10, 1973 for $25,000.00, and is therefore liable to Lear for this first misrepresentation.

■ As to the other checks written by the Lears, there is no such express authority. Therefore, we must consider whether there was apparent authority for David's acts. Apparent authority is created when a principal places an agent in such a situation or creates such an appearance that a third person reasonably and prudently believes the agent has the authority to act. *Jefferson-Gravois Bank v. Cunningham,* 674 S.W.2d 561, 563 (Mo.Ct.App.1984); *Houston v. Groth Enterprises, Inc.,* 670 S.W.2d 178, 180 (Mo.Ct.App.1984).

Prior courses of dealings and similar transactions can create such a situation. *See Jefferson-Gravois Bank,* 674 S.W.2d at 563–64. Allowing David to collect the Lears' first check could be seen as creating apparent authority for the agent to collect all premium checks. However, we must focus not only on the acts of the principal but also on the question whether the Lears were acting reasonably and as persons of ordinary prudence. *See Houston,* 670 S.W.2d at 180.

In exchange for each of their checks the Lears signed with David what can only be described as personal notes.[7] The notes do not state that David agreed to invest the money in Equitable but rather that *he* would pay them a fixed amount every month. The notes never, at any point, mention Equitable. They were not printed but were either typed or handwritten, were never more than one page in length, and could be easily read. As stated, the Lears never received any documents or applica-

tions of any sort from Equitable other than David's business card which he gave them.[8] Moreover, the checks they received from David did not appear to be drawn upon a business account, but rather were from his personal account which listed both him and his wife as account holders.

We appreciate the fact that the Lears were elderly and in somewhat poor health at the time of these transactions. However, the totality of the evidence, especially the personal notes, leads us to hold that an ordinarily reasonable and prudent person could not reasonably have believed that David had the apparent authority to collect the later premium checks.

Again, while we are mindful that it is for the jury and not us to evaluate and weigh the evidence, an examination of the record as a whole simply does not disclose the evidence of substance which is needed to support this jury verdict. *See Sanders v. St. Louis County,* 724 F.2d 665, 668 (8th Cir.1983). Since we have now found that Equitable could not be liable for more than the misrepresentations made in connection with the first check, this case will be remanded for a redetermination as to the amount of actual and punitive damages[9] for which Equitable is or may be liable.[10]

*(2) Statute of Limitations Issues.*

Appellant next raises arguments dealing with the statute of limitations. Equitable contends that as a matter of law we should find that Lear did not prove this action was brought within the applicable statute of limitations period, and that the district court erred in not instructing the jury on the statute.

■ At trial Equitable did not request a specific written instruction dealing with the

---

7. *See supra* note 3.

8. It does not help the Lears that David said he would file all applications for them as apparent authority cannot be based on the declarations of an agent. *See Houston,* 670 S.W.2d at 180.

9. From what has been said, it follows that further discussion of Equitable's claims that the evidence was insufficient to prove damages is unnecessary.

10. Equitable also argues that David was the agent of both the insured and the insurer. *See Meyers v. State Farm Life Insurance Co.,* 416 S.W.2d 10, 16 (Mo.Ct.App.1967). While a case can be made that David was the agent of the Lears, this argument was not submitted to the jury, and the evidence is not sufficient to establish it as a matter of law.

statute of limitations, but prior to the charge to the jury it did object that a statement regarding the statute should be placed in the verdict director instruction. Lear argues that appellant cannot make this argument on appeal because it failed to request such an instruction.

We note that Fed.R.Civ.P. 51 allows a party to file a request that the court instruct the jury on a particular matter and specifically states that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict." From this we read the rule as stating that while a party *may* request an instruction, ordinarily what is necessary in order to preserve the matter for appeal is to object to the instruction or in some way alert the district court to a potential error before submission to the jury. *See Honeywell, Inc.,* 735 F.2d at 1069; *Missouri Pacific Railroad v. Star City Gravel Co.,* 592 F.2d 455, 459 (8th Cir.1979). Therefore, in present circumstances we believe Equitable's objection was sufficient to preserve the matter on appeal.

Lear also complains that Equitable cannot raise the instruction issue because it was not raised in Equitable's motion for a new trial. However, we have previously held that a motion for a new trial is not a prerequisite to raising an objection to a jury instruction on appeal where, as here, the instruction was objected to at trial. *See Sherrill v. Royal Industries,* 526 F.2d 507, 509 n. 2 (8th Cir.1975).

In order to establish that the trial court erred in not instructing on this issue Equitable must prove that there is material evidence to support its affirmative defense and that it was prejudiced. *See Hale v. Firestone Tire and Rubber Co.,* 756 F.2d 1322, 1331 (8th Cir.1985); *Crues v. KFC Corp.,* 729 F.2d 1145, 1152 (8th Cir.1984).

The applicable statute of limitations is Mo.Rev.Stat. § 516.120(5) which states that an action for fraud must be brought within five years of the date of discovery which must be within ten years of the acts creating the fraud. The cause of action accrues when a person discovered or should have discovered the fraud except when a fiduciary relationship exists and then the period begins on the date of actual discovery. *Burr v. National Life & Accident Insurance Co.,* 667 S.W.2d 5, 7 (Mo.Ct.App.1984).

Here, the acts constituting the alleged fraud occurred in 1973, and this action was filed on March 15, 1983. The facts are unclear as to when Lear first discovered the fraud. There is evidence it might have been in 1980 when her husband died, in 1978 when she went to the Hannibal police to inquire into where David lived, or in 1974 when she testified she first began having problems with the income checks. Lear contends that the date of discovery should be the actual date of discovery and not when she should have discovered the fraud because there was a fiduciary relationship between the Lears and David.

We find that the district court erred and Equitable was prejudiced in not submitting an instruction on this issue to the jury. There is material evidence supporting appellant's affirmative defense and the facts are controverted. Since there are conflicting facts which are more properly to be evaluated by a jury, we cannot decide this issue as a matter of law. Therefore, we reverse on this issue and direct that on remand of the case for a new trial the question whether Lear brought her claim within the statute of limitations should be submitted and determined.

*(3) Effect of Judgment Against David.*

Appellant argues that by pursuing David personally in bankruptcy court on the basis of the notes, Lear has elected her remedies and is collaterally estopped from suing Equitable on account of the same acts, contracts and transactions. We are not so persuaded.

First, we are not certain that it is not res judicata, or claim preclusion, rather than collateral estoppel, or issue preclusion, that Equitable is raising since it seems to argue that Lear's claim is barred. *See* 1B J. Moore, *Moore's Federal Practice,* ¶ 0.401 (2d ed. 1984). Regardless, neither doctrine

applies here because the same claim or issue is not involved since the prior case was based on David's obligation under the personal notes while this case is based on the misrepresentation.

Res judicata can be applied when a party could have raised an issue in a prior case but did not. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). However, this does not block the present suit, for while David might have been able to raise the res judicata defense if he had been sued again here, Equitable cannot raise it. Moreover, Equitable's claim of collateral estoppel may be somewhat misguided for, if the doctrine applies, it is possible that Lear could raise it and claim Equitable is estopped from denying liability at least for $125,000.00. The bankruptcy judgment of course is not a limit as to the amount of punitive damages since in Missouri a principal may be found liable for exemplary damages regardless of whether the agent is found so liable. *Tietjens v. General Motors Corp.*, 418 S.W.2d 75, 88 (Mo.1967).

■ We are hesitant to apply the doctrine of election of remedies as it is harsh and not favored by the courts. *Quinn v. DiGiulian*, 739 F.2d 637, 644 (D.C.Cir. 1984). It does not apply here because, while Lear could elect her remedies as to David, it has not been demonstrated that there was a real election to be made as to Equitable's liability. Finally, we are unwilling to apply election of remedies where, as here, Equitable has not been substantially prejudiced. *See Inland Waterways Corp. v. Doyle*, 204 F.2d 874, 879 (8th Cir.1953); 1B J. Moore, *Moore's Federal Practice*, ¶ 0.405[7] (2d ed. 1984). Equitable did not have to defend or be involved in the prior suit, and there was no confusion as to what it had to defend against as only one claim has been and could be raised against it. Moreover, there is little chance of double recovery as there appears to be little hope of recovering from David.

### (4) Agency Instruction Issue.

■ Equitable argues that it was error for the trial court to give instruction number six which was Missouri Approved Instruction 13.02 defining actual authority, and instruction number seven, a non-MAI, which defined apparent authority. It contends that only instruction six properly states the applicable substantive law and that it was misleading to give an alternate definition as to scope and course of agency in instruction seven.

Appellant's argument is unpersuasive. We have recognized that because of the trial court's broad discretion in making jury instructions we will not reverse on this basis "as long as the entire charge fairly and adequately contains the law applicable to the case...." *Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 823 (8th Cir.1983). Also, parties are entitled to have the jury instructed on their theory of the case so long as it is properly requested, including a party's alternate theory of the case. *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 528 (8th Cir.1980). We further note that the district court is not required to give an instruction out of the MAI. *See Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 904 (8th Cir.1985).

Here, instruction number seven on Lear's alternate theory of apparent authority allowed the jury to find authority based on the acts of Equitable without looking to the acts of the agent. This is an accurate statement of the Missouri definition of apparent authority. *See Hyken*, 678 S.W.2d at 457–58. Therefore, we conclude it was proper to submit both instructions six and seven as they properly stated Lear's alternate theories of relief and were not misleading.

### (5) Verdict Director Issue.

■ Equitable next argues that it was error to submit instruction number five, the verdict director, because it did not require the jury to find that there was a contemporaneous intent by the agent not to perform at the time the misrepresentation was made.

This issue has not been properly preserved for appeal because Equitable did not

request an instruction on this issue, nor did it timely object to the court's failure to give such an instruction in accordance with Fed. R.Civ.P. 51. *See Honeywell, Inc.,* 735 F.2d at 1069. Nor has plain error been shown, *see id.,* since there is evidence which would point to David's contemporaneous intent to defraud such as the personal notes which were signed by the Lears and David when the couple gave him the checks. This could fairly be said to evince an intention on his part to not give the money to Equitable.

*(6) Deposition Issue.*

■ Equitable argues that the trial court erred in allowing Lear to offer into evidence portions of a deposition of C.B. Peterson, an Equitable employee. It contends that she had violated the pretrial discovery orders and had not provided appellant's attorney with notice prior to trial that she would use this evidence.

As a district court has broad discretion in handling these matters, we are hesitant to reverse "unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness...." *Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir.1977); *see also Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342, 344 (8th Cir.1979).

Here the record revealed that Peterson lived in Cook County, Illinois (the trial took place in Hannibal, Missouri), and that Lear did attempt to subpoena him but was unable to do so. We are not told whether if Equitable had wanted its employee present to testify it could have procured his attendance. But in any event, we do not find that the district court abused its discretion. This deposition evidence could have been admitted under Fed.R.Civ.P. 32(a)(3)(B) and (D).[11]

*(7) Parol Evidence Issue.*

■ Last, Equitable argues that it was a violation of the parol evidence rule to

allow Lear to testify as to what she believed David would do with the monies and thereby vary the terms of the notes signed by the Lears and David.

This argument is meritless. Lear was attempting to prove the misrepresentation and not who was the obligor under the notes through this testimony. Therefore, the parol evidence rule does not exclude this testimony. *See Crawford v. Smith,* 470 S.W.2d 529, 532 (Mo.1971) (en banc).

### CONCLUSION.

To summarize, we have just held that David was neither actually nor apparently authorized to collect more than the first check from the Lears, and as a result Equitable is not liable for more than damages flowing from the first misrepresentation. Therefore, we remand the case so that the amount of damages, both actual and punitive, if any, can be calculated. On remand the trier of fact may determine as well whether the statute of limitations was satisfied.

---

11. Equitable also argues that the trial court erred in admitting "certain exhibits" which violated the pretrial order due to Lear's failure to provide them to defense counsel prior to trial. As appellant's brief does not identify which exhibits these are, we are unable to determine whether the district court abused its broad discretion in admitting them. *See McDowell v. Safeway Stores, Inc.,* 753 F.2d 716, 717 (8th Cir.1985). Appellee seems to believe that they are checks written on David's personal account to Equitable, and which appellant had in its possession prior to trial. From this limited record we cannot find any abuse of discretion.