Jerry E. PARKER; John W. Houston; John P. Madgett, III; Robert E. Coffie; Kaye Creasy Sheehan, Appellants,

v.

Walter E. BROOM; Jess G. Martin, Jr.; Bro-Mar Oil Company, Appellees.

No. 86–1843.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1987.

Decided June 12, 1987.

Mark G. Arnold, St. Louis, Mo., for appellants.

Mark S. Packer, St. Louis, Mo., for appellees.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

BRIGHT, Senior Circuit Judge.

Jerry Parker, John W. Houston, John P. Madgett III, Robert E. Coffie and Kathryn Creasy Sheehan brought this action against Walter E. Broom and Jess G. Martin, d/b/a Bro-Mar Oil Company (Bro-Mar) for recovery of damages arising out of the company's sale of unregistered security interests in an oil well. Bro-Mar defended the lawsuit on the basis that the offer and sale constituted a private offering exempt from registration. The trial court[1] submitted the issue to a jury which decided in favor of the defendant sellers. Following a post-trial order denying a judgment n.o.v. to the buyers (Parker, et al.), these buyers appealed from the adverse judgment. We affirm.

## I. BACKGROUND

Martin and Broom formed Bro-Mar in early 1983, and the company became active in the business of acquiring oil leases in southern Illinois for exploration and development. In January 1984, Bro-Mar purchased a three-quarter working interest in an oil producing property known as the Allen lease. The Allen lease included a working oil well at the time of purchase, and Bro-Mar planned to drill another well. Although Bro-Mar's previous investments in oil leases had been unsuccessful, the Allen lease appeared to be a less risky venture because the property already included a working oil well and an injection pump necessary to the drilling process.

Bro-Mar then began to seek investors by marketing working interests in the Allen lease. Bro-Mar contacted investors in its previous ventures, and they in turn informed friends and colleagues about the investment opportunity with Bro-Mar.

Plaintiff John Houston had previously invested in several of Bro-Mar's ventures. Houston's investments with Bro-Mar had been unsuccessful, but Jess Martin persuaded Houston that the Allen lease presented a better potential for success. Houston told several business colleagues of Bro-Mar's Allen lease venture. One of

Houston's associates told several people in Ohio about the Allen lease, and two of them invested in Bro-Mar's project. Houston and several of his colleagues also invested in the Allen lease.

Plaintiffs Parker, Madgett, Coffie and Sheehan were business associates of Houston.[2] They were aware of Houston's investments in the oil and gas industry and had instructed Houston to inform them of any oil and gas investment opportunities. When Houston heard about the Allen lease, he gave their names to Jess Martin who mailed the investment materials directly to the investor. The investor then mailed a check to Bro-Mar. Houston received no compensation for directing investors to Bro-Mar.

Bro-Mar did not issue a prospectus or registration statement in connection with the Allen lease. Bro-Mar did, however, possess a geological report which it gave to Houston. The report contained information on production history and prospects for drilling another well.

The Allen lease turned out to be unsuccessful, and several investors sued to recover their investments. They claimed that Bro-Mar had sold them unregistered securities in violation of sections 5(a) and 12(1) of the 1933 Securities Act. 15 U.S.C. §§ 77e(c), 77l (1982). Bro-Mar claimed, by way of an affirmative defense, that its sale of interests in the Allen lease was a private offering and thus exempt from registration requirements. Bro-Mar also filed a counterclaim against Houston for contribution claiming that he acted as a seller.

As we have observed, the jury returned a verdict for Bro-Mar and thus did not reach a verdict on the counterclaim. The district court denied the plaintiffs' motion for judgment n.o.v. and the plaintiffs appeal.

## II. DISCUSSION

■ The Securities Act of 1933 requires that a registration statement be filed before any security can be offered for sale in interstate commerce. 15 U.S.C. §§ 77e(c), 77l. A private offering, however, is exempt from the registration requirement. 15 U.S.C. § 77d(2). The applicability of this exemption depends on whether the offerees need the protection of the registration requirement. *SEC v. Ralston Purina*, 346 U.S. 119, 124–25, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953). The burden of proving a private offering rests upon the issuer. *Id.* at 126–27, 73 S.Ct. at 985. The issuer must show that the offerees had access to the kind of information that a registration statement would disclose so that an offeree can make an informed investment decision. *General Life of Mo. Inv. Co. v. Shamburger*, 546 F.2d 774, 781–82 & n. 10 (8th Cir.1976).

■ We may reverse the jury's verdict only if the evidence, when viewed in the light most favorable to the jury's verdict and drawing all reasonable inferences in favor of the prevailing party, fails to support the verdict. *Lear v. Equitable Life Assurance Soc'y*, 798 F.2d 1128, 1131 (8th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 953, 93 L.Ed.2d 1001 (1987); *Toro Co. v. R & R Products Co.*, 787 F.2d 1208, 1213–14 (8th Cir.1986). Upon examination of the record, we determine that the plaintiffs have not met this heavy burden.

We note that the jury instruction correctly stated the law:

In determining whether there was a private offering of the oil and gas interests, you may consider the following factors:

First, the number of offerees and their relationship to each other and to the issuer.

Second, the number of units offered.

Third, the size of the offering.

Fourth, the manner of the offering.

The ultimate test is whether the persons to whom the offering is made are in such position with respect to the issuer that they either actually have such information as a registration itself would

---

2. Houston, Parker and Coffie were executives of Consolidated Grain & Barge Co., as well as limited partners in B–K Drilling Co. Madgett was President of Wellspring Corporation, a consulting company fifty-percent owned by Consolidated. Sheehan was a commercial loan officer, who did banking work for Consolidated and Houston.

have disclosed, or they have access to such information. Stated otherwise, the ultimate test is did the offerees know or have a realistic opportunity to learn the facts essential to an investment judgment.

Jury Instruction No. 11. The plaintiffs did not specifically object to the instruction.

Although Bro-Mar sold investment interests to several parties, the jury could have determined that the transaction between Bro-Mar and these plaintiffs amounted to a separate and discrete transaction from other sales. In this transaction, Bro-Mar essentially dealt only with Houston who represented himself and his business associates—the other plaintiffs in this action. Although the sellers mailed investment materials to Houston's associates, the jury could have determined from the circumstances that the actual offering involved only Bro-Mar and Houston.

Houston, being an experienced investor, knew the history of the wells in the area, as well as Bro-Mar's background. Thus, the jury could very well have determined that Houston possessed all the information necessary for an informed investment decision. Accordingly, the jury could have reasonably concluded that Bro-Mar, through Houston, conducted a private offering.

## III. CONCLUSION

The evidence permitted various inferences to be drawn by the jury, at least some of them supportive of the jury verdict. Accordingly, the district court did not err in denying the motion of plaintiffs for judgment n.o.v.

Affirmed.